IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LASHELLIA L. BROWN,                )
                                   )
                Plaintiff,         )
                                   )
vs.                                )       Case No. 06-1282-WEB
                                   )
MICHAEL J. ASTRUE,[1]              )
Commissioner of                    )
Social Security,                   )
                                   )
                Defendant.         )
_____)


RECOMMENDATION AND REPORT


        This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff
supplemental security income payments.  The matter has been fully
briefed by the parties and has been referred to this court for a
recommendation and report.

        The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be

_____

        [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

1

conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can

2

establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to

step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

Administrative law judge (ALJ) Melvin B. Werner issued his decision on March 31, 2006 (R. at 10-18).  At step one, the ALJ found that plaintiff has never engaged in substantial gainful

activity (R. at 12).[2]  At step two, the ALJ found that plaintiff
had the following severe impairments: borderline intellectual
functioning and a learning disorder (R. at 12).  At step three,
the ALJ determined that plaintiff's impairments do not meet or
equal a listed impairment (R. at 14).  After establishing
plaintiff's RFC, the ALJ found at step four that plaintiff has no
past relevant work (R. at 17).  At step five, the ALJ found that
other jobs exist in the national economy in significant numbers
that plaintiff can perform.  Therefore, the ALJ concluded that
plaintiff was not disabled (R. at 17-18).

**I.  Are the ALJ's RFC findings supported by substantial evidence?**

The ALJ determined that as a result of her borderline
intellectual functioning and learning disorder, plaintiff has
moderate limitations in the ability to understand, remember, and
carry out detailed instructions and moderate limitations in the
ability to maintain attention and concentration for extended
periods (R. at 15).  The court will summarize the medical opinion
evidence, and then set forth the ALJ's analysis of that evidence.

Dr. Molly Allen performed a consultative psychological
examination on May 10, 2004, which included an interview of the

---

[2]Plaintiff had been awarded supplemental security income
disabled child payments beginning November 1991 because of a
finding of mental retardation (R. at 10).  Plaintiff turned 18
years of age on November 16, 2003 (R. at 31).  Pursuant to 20
C.F.R. § 416.987, a redetermination of disability must be made
for a person found disabled as a child who becomes 18 years of
age.

plaintiff and a mental status examination, including an IQ test

(R. at 28-30).  Dr. Allen summarized her findings as follows:

> SUMMARY: Ms. Brown's report of her current
> circumstances are consistent with other
> available information.  **Ms. Brown qualifies
> for a diagnosis on Axis 1 of some features of
> a Conduct Disorder because of her acting out
> in the past.** Given her age that diagnosis
> really does not apply too much. She is about
> on the border of more adult diagnosis where a
> Conduct Disorder is more of a juvenile
> diagnosis. However, given the fact that she
> tends to [be] immature, the diagnosis is
> still a pretty good representation of her
> overall difficulties. On Axis II, she has a
> diagnosis of Borderline Intellectual
> Functioning. Ms. Brown appears to be the kind
> of individual who is probably going to
> struggle with any kind of an academic
> program. She is able to understand and carry
> out simple instructions. Her attention and
> concentration may be a bit weak because of
> her low overall intellectual abilities. **It
> sounds like she has had difficulty in the
> past getting along with others and so dealing
> with the frustration in a job setting
> including working with supervisors and
> coworkers may be pretty difficult for her.**
> She may not really comprehend the need for
> productivity, punctuality and attendance in a
> workplace because she really has not had to
> do much of that lately, especially concerning
> the fact that she has been on homebound
> education. She is not really a very
> persistent individual and her claims that she
> has primary [responsibility] for her baby are
> somewhat suspect as it appears that her
> family do a lot of organization of her life
> for her.

(R. at 29-30, emphasis added).

Two state agency psychological consultants then reviewed the

record and made specific RFC findings.  The first one, by Dr.

6

Jessop, and dated May 19, 2004 found that plaintiff was moderately limited in 6 categories (out of 20 listed on the form):

> 5.  The ability to carry out detailed instructions.
>
> 6.  The ability to maintain attention and concentration for extended periods.
>
> 9.  The ability to work in coordination with or proximity to others without being distracted by them.
>
> 12.  The ability to interact appropriately with the general public.
>
> 14.  The ability to accept instructions and respond appropriately to criticism from supervisors.
>
> 15.  The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(R. at 53-54).[3]  In his narrative, Dr. Jessop noted that plaintiff's mother indicated that plaintiff had "some interpersonal problems with neighbors" (R. at 51).  Dr. Jessop indicated that testing[4] showed a need for her work to be of a routine, repetitive type in a setting with limited interpersonal contact and clearly defined supervisory relations and expectations (R. at 57).

---

[3]Dr. Jessop failed to indicate if plaintiff had a limitation in #3, the ability to understand and remembers detailed instructions (R. at 53).

[4]The reference to testing appears to be a reference to Dr. Allen's consultative examination.

The second state agency assessment was prepared by Dr. Blum on July 28, 2004 (R. at 91-92).  Dr. Blum's RFC assessment found plaintiff moderately limited in the following 3 categories:

> 3.  The ability to understand and remembers detailed instructions.
>
> 5.  The ability to carry out detailed instructions.
>
> 6.  The ability to maintain attention and concentration for extended periods.

(R. at 89-90).  Dr. Blum stated in his narrative that plaintiff's limitations in the social interaction domain are judged to be mild; he further commented that her behavior problems appear to be somewhat in the past (R. at 91).

As noted above, the ALJ found that plaintiff had moderate limitations in 2 categories: (1) the ability to understand, remember and carry out detailed instructions, and (2) the ability to maintain attention and concentration for extended periods of time (R. at 15).  The ALJ discussed the opinion evidence set forth above as follows:

> As for the opinion evidence, there is no treating source opinion regarding the claimant's ability to work. Accordingly, the undersigned adopts the recommendations of the State agency medical consultants who reviewed the evidence at the reconsideration level of adjudication and determined that the claimant had moderate limitations in the ability to understand, remember, and carry out detailed instructions and to maintain attention and concentration for extended periods of time. Although the State agency medical consultants did not examine the claimant, they provided

8

specific reasons for their opinions about the claimant's residual functional capacity (exhibit 11) showing that these opinions were grounded in the evidence of record, including careful consideration of examining psychologist findings, the opinions of the claimant's teacher, and allegations by the claimant and her mother about the claimant's symptoms and limitations (exhibit 31). Thus, these opinions have been provided substantial weight (20 C.F.R. 416.927(d) and (f); Social Security Rulings 96-2p, 96-6p, 96-8p).

The State agency medical consultants who reviewed the evidence at the initial level also concurred that the claimant would have moderate difficulty following detailed instructions and maintaining attention and concentration for extended time periods, but also determined that the claimant would have moderate difficulty working in coordination or proximity to others without being distracted by them, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes (exhibit 4). **The undersigned concurs with the findings of the State agency medical consultants at the reconsideration level that the claimant's behavioral problems appear to be in the past and that the claimant has only mild limitations in social functioning.**

**Although the reconsideration reviewer at the hearing also opined that the claimant should avoid jobs that require close contact with others (exhibit 13/6), this is not consistent with evidence presented at the hearing that the claimant has regular contact with friends without problem and with evidence presented at the reconsideration hearing that the claimant was able to get along well with coworkers during her short period of employment (exhibit 13/2).**

9

> Dr. Allen stated that the claimant is able to
> understand and carry out simple instructions,
> but would have low attention and
> concentration due to her borderline
> intellectual functioning. Dr. Allen noted
> that the claimant reported previous
> difficulty getting along with others and
> frustration in a previous job setting,
> indicating that working with coworkers and
> supervisors may be difficult for the
> claimant. Dr. Allen stated that the claimant
> has had no recent experience with
> punctuality, productivity, and workplace
> attendance and does not appear to be very
> persistent (exhibit 2/3). Dr. Allen is not a
> treating source and her opinion is not
> entitled to controlling [weight].
> **Subsequent information indicates that the
> claimant is able to maintain good
> relationships with friends and got along well
> with former coworkers.** The claimant is able
> to adhere to a childcare schedule. The
> undersigned concurs with Dr. Allen that the
> claimant is able to understand and carry out
> simple instructions and would have some
> difficulty with extended attention and
> concentration, but finds that later evidence
> shows that the claimant would be able to get
> along with others, persist at tasks, and
> maintain an acceptable work schedule and work
> attendance.

(R. at 16, emphasis added).

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts

with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

The key issue in this case is whether the ALJ erred by failing to include moderate limitations in various social interaction categories, as found in the 1st state agency assessment, and as opined by Dr. Allen.  The ALJ concurred with the finding of the 2nd state agency assessment that plaintiff's behavioral problems appear to be in the past, and that plaintiff has regular contact with friends without problems and was able to get along with coworkers during a short period of employment (R. at 16).  The court's role is to determine if substantial evidence supports these findings by the ALJ.

Mary Robbins, the disability hearing officer, stated in her decision of October 4, 2004 that plaintiff testified she had problems with others at school when they said something or glared at her and she would talk back to them and she actually hit a couple of them.  Plaintiff also testified that she did not have problems with coworkers at Sonic because they were nice and helped her (R. at 96).  Third party testimony indicated that plaintiff has some problems getting along with her neighbors so

11

she stays inside most of the time, that she does not get along too well with police but she got along pretty well with her teachers (R. at 97).

A teacher questionnaire was filled out on May 27, 2004. The teacher filling out the form indicated that plaintiff was homebound due to anger and pregnancy, and had many suspensions for behavior (R. at 130, 133). In the category of interacting and relating with others, the teacher found plaintiff had a slight problem in 7 categories, an obvious problem in 5 categories, and a serious problem in 1 category (R. at 130).[5] Areas of obvious problems were: playing cooperatively with others, seeking attention appropriately, asking permission appropriately, following rules, and respecting/obeying adults in authority. The area rated a serious problem was plaintiff's ability to express anger appropriately (R. at 130).

Plaintiff testified at the hearing on September 20, 2005 that she had conflicts and fights with other students (R. at 181, 183). After she turned 18 years of age, she "cut on an officer." Plaintiff stated that she was incarcerated for 2 weeks because of the battery on the law enforcement officer (R. at 28, 184). Although plaintiff testified that she had contact with friends, that contact is by phone and not in person (R. at 187-188). This

---

[5]The form had the following rating key: 1-no problem, 2-a slight problem, 3-an obvious problem, 4-a serious problem, and 5-a very serious problem (R. at 130).

is consistent with Dr. Allen's report that plaintiff has not socialized with her friends in "quite some time" and spends most of her time at home (R. at 28).  Plaintiff indicated that she does not fit in with other people (R. at 194).  Plaintiff's mother testified that plaintiff has problems getting along with other people, often getting mad at them, including her mother. Plaintiff has gotten mad at her brothers and sometimes calls the police due to these conflicts with her brothers (R. at 196-197).

Although the 2nd state agency assessment by Dr. Blum (July 28, 2004) indicated that plaintiff's behavior problems appeared to be somewhat in the past, Dr. Blum failed to indicate what evidence in the record led him to that conclusion.  Dr. Blum never examined the plaintiff.  By contrast, Dr. Allen, who examined the plaintiff (May 10, 2004), and Dr. Jessop, the 1st state agency consultant (May 19, 2004), found that plaintiff had more serious problems with social interaction.  The information from the school (May 27, 2004) indicated obvious or serious problems in 6 of 13 categories in the area of interacting and relating with others, including a serious problem with expressing anger appropriately.  The school also reported that she had many suspensions for behavior and was homebound due to anger and her pregnancy.

Sometime after plaintiff turned 18 years of age (after Nov. 16, 2003) she was convicted of battery on a law enforcement

officer and served 2 weeks in jail.  Although the ALJ stated that plaintiff had regular contacts with friends without problems, plaintiff actually testified that her contacts with friends is by phone and not in person.  The ALJ failed to mention that plaintiff's mother testified that plaintiff has problems getting along with other people, and has sometimes gotten so mad at her brothers that she calls the police.  The disability hearing officer and Dr. Jessop reported a statement from plaintiff's mother on May 5, 2004 that plaintiff has some problems getting along with neighbors, so she stays inside most of the time (R. at 23, 51, 97).  The disability hearing officer also stated that plaintiff testified that she did not have problems with coworkers at Sonic because they were nice and helped her (R. at 96).

In summary, the court does not find that substantial evidence supports the ALJ's determination that plaintiff's behavioral problems appear to be in the past; in fact, other than the opinion of Dr. Blum, who never saw the plaintiff, there is no evidence to support a finding that plaintiff's behavioral problems in terms of interacting and relating with others appears to be in the past.  At best, the evidence only demonstrates that plaintiff did not have problems with coworkers during her short period of employment because they were nice and helped her.[6]  The

---

[6]Based on the testimony, plaintiff worked at Sonic for approximately one week (R. at 13, 183).

14

reports of Dr. Allen and Dr. Jessop, the school report, the decision of the disability hearing officer, and the testimony of plaintiff and her mother indicate plaintiff's problems with interacting and relating with others are more severe than the ALJ's RFC findings, which did not include any limitations in the area of social interaction.  Therefore, the case shall be remanded in order for the ALJ to determine plaintiff's limitations in the area of social interaction and its impact on her ability to work.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on April 5, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge

15